## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRIAN HAUGHEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-865** |
| **AMERICAN WALL BED COMPANY, INC., ET AL.** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court in this products-liability case is the motion[1] of Defendants American Wall Bed Company, Inc. (d/b/a Murphy Bed Depot) and Southern Owners Insurance Company for summary judgment dismissing Plaintiff Brian Haughey's claims for inadequate warning under the Louisiana Products Liability Act (LPLA), LA. STAT. ANN. §§ 9:2800.51–9.2800.60, and for negligence under Louisiana Civil Code Article 2315. Also before the Court is the motion[2] of Murphy Bed Depot and Southern Owners Insurance Company to exclude the expert testimony and report of Haughey's consulting engineer Charles E. Benedict, who opines about the cause of injuries Haughey suffered while disassembling a wall-mounted bed that Murphy Bed Depot shipped to him. For the reasons that follow, the motion for summary judgment is **GRANTED IN PART** as to Haughey's negligence claim but **DENIED IN PART** as to Haughey's LPLA inadequate-warning claim; the motion to exclude Benedict's expert testimony and report is **GRANTED IN PART** and **DEFERRED IN PART**.

---

[1] ECF No. 28.
[2] ECF No. 27.

## I.   BACKGROUND

This is an LPLA inadequate-warning case. It arises from injuries Plaintiff Brian Haughey suffered while disassembling a Murphy "Next Bed"—manufactured in China by a non-party to this litigation—that Defendant Murphy Bed Depot bought prepackaged from Defendant Murphy Wallbed Systems, Inc., sold through its website, and then shipped to Haughey.[3]

Murphy Bed Depot sells retractable wall-mounted bed frames—known as "Murphy Beds" or "Murphy Bed Systems"—through its website and showroom.[4] One of the retractable wall-mounted bed frames that Murphy Bed Depot sells on its website is known as the "Next Bed."[5] The Next Bed is manufactured and designed in China by TECview Group Holdings, Ltd.[6] Murphy Bed Depot buys crates of prepackaged Next Beds from Murphy Wallbed Systems, stores them in its warehouse, and then ships them to buyers.[7] Assembly instructions are included in the prepackaged Next Beds Murphy Bed Depot buys from Murphy Wallbed Systems.[8]

---

[3] ECF No. 1.
[4] ECF No. 30-2 at 6:5–10; ECF No. 28-2 at 2 ¶ 5.
[5] ECF No. 28-2 at 2 ¶ 7.
[6] ECF No. 30-2 at 36:2–11.
[7] ECF No. 28-2 at 2 ¶ 8.
[8] *Id.* at 2 ¶ 9.

Murphy Bed Depot does not actually manufacture or design the Next Beds.[9] In fact, Murphy Bed Depot has no input, control over, or influence in the design, construction, or quality of the Next Beds themselves.[10] Nor does Murphy Bed Depot modify or package the Next Beds that are shipped to online buyers.[11] The "About Us" page of Murphy Bed Depot's website, however, represents that Murphy Bed Depot "took the basic principle that Murphy brought forward, [and] improved, updated, and redesigned it using the latest technology and modern manufacturing procedures."[12]

Haughey bought a queen-sized Next Bed from Murphy Bed Depot's website in early March 2022.[13] Haughey assumed that Murphy Bed Depot designed it because he bought it from Murphy Bed Depot's website.[14] The bed Haughey bought was part of a container purchase by Murphy Bed Depot from Murphy Wallbed Systems. As part of that purchase, Next Beds were shipped to Murphy Bed Depot directly from China.[15]  Murphy Bed Depot in turn shipped Haughey one of the prepackaged Next Beds that Murphy Bed Depot had bought from Murphy Wallbed Systems.[16]

---

[9] *Id.* at 2 ¶ 10; ECF No. 30-2 at 13:3–8.

[10] ECF No. 28-2 at 2 ¶ 11.

[11] *Id.* at 2 ¶ 11.

[12] ECF No. 29-1 at 1. Haughey testified that he saw this language on Murphy Bed Depot's website. ECF No. 30-3 at 6:18. But Haughey "can't recall when [he] saw it"—before or after buying the Next Bed. *Id.* at 6:15–21. Haughey similarly could not recall whether he decided to buy the bed because of the website's representation that Murphy Bed Depot "redesigned" the bed. *Id.* at 6:22–25.

[13] ECF No. 28-2 at 2 ¶ 13.

[14] ECF No. 30-3 at 5:4–21.

[15] ECF No. 30-2 at 32:10–24, 42:1–14.

[16] ECF No. 28-2 at 2 ¶ 14.

Murphy Bed Depot did not design or manufacture the Next Bed that Haughey bought.[17] TECview Group Holdings did.[18] The Next Bed that Haughey bought came prepackaged from Murphy Wallbed Systems: Murphy Bed Depot did not package the Next Bed or cause the assembly instructions to be included in the Next Bed's package.[19] The prepackaged assembly instructions stated that they are copyrighted by Murphy Wallbed Systems.[20] But those assembly instructions did not include instructions on how to disassemble the Next Bed.[21] Nor did the instructions warn about the springs that connect the Next Bed's frame to the wall-mount bracket.[22]

The Next Bed that Haughey bought included slat holders labelled with the initials "MWBS"—for Murphy Wallbed Systems.[23] But nothing on the Next Bed or in the package itself identified the product's actual manufacturer, TECview Group Holdings.[24] Murphy Bed Depot's name is not included anywhere on the Next Bed or inside the Next Bed's package;[25] its name appears only on the shipping label.[26]

---

[17] *Id.* at 2 ¶ 15.
[18] ECF No. 30-2 at 35:11–18; 36:2–23.
[19] ECF No. 28-2 at 2 ¶ 16.
[20] *Id.* at 3 ¶18; ECF No. 30-2 at 34:20–35:3.
[21] ECF No. 30-2 at 39:2–15.
[22] *Id.* at 5:3–12.
[23] ECF No. 28-2 at 3 ¶ 18.
[24] ECF No. 30-2 at 81:24–82:3.
[25] ECF No. 28-2 at 2 ¶ 17.
[26] ECF No. 30-2 at 9:2–17.

Haughey's Next Bed was delivered in mid-March 2022.[27] The product's package included two wall-mount brackets and eight springs linking the brackets and the bed frame; the springs allowed the bed frame to be moved to and from the "up" (i.e., stored) and "down" (i.e., in use) positions.[28] Haughey assembled the Next Bed "without incident" on a bedroom wall using the instructions included in the package.[29]

The day after assembling the Next Bed, Haughey decided to move the bed to another wall of his bedroom.[30] Haughey thus began to disassemble the Next Bed in the "down" position with the eight springs under tension.[31] He did so because "there was no direction," and because he thought it "ma[de] the most sense."[32] He "didn't want" to disassemble the Next Bed in the "up" position because he "didn't want [the bed] to fall on [him]."[33] After Haughey removed the last screw connecting one wall-mount bracket to the wall, the bracket "recoiled" and hit him in the face.[34]

---

[27] ECF No. 28-4 at ¶ 15; ECF No. 30-1 at ¶ 15.

[28] ECF No. 1 at ¶¶ 11, 17, 18.

[29] ECF No. 28-4 at ¶ 16; ECF No. 30-1 at ¶ 16.

[30] ECF No. 28-4 at ¶17; ECF No. 30-1 at ¶ 17.

[31] ECF No. 30-3 at 12:17–22.

[32] *Id.* at 12:17–22.

[33] *Id.* at 12:14–22. Haughey's statement of disputed material facts asserts that Haughey "consulted the Assembly Instructions" "[w]hile disassembling the Product." ECF No. 30-1 at ¶ 18. But Haughey has not identified competent summary-judgment evidence that supports the assertion. *Id.* His unverified complaint is not competent summary judgment evidence, *see Johnson v. Bd. of Supervisors of La. State. Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024), and the cited portions of deposition transcripts of Haughey and Zachary Anderson, Murphy Bed Depot's corporate representative, even viewed in Haughey's favor, do not support a reasonable inference that Haughey "consulted" the assembly instructions during disassembly. *See* ECF No. 1 at ¶ 16; ECF No. 30-3 at 12:11–13 & 129:17–19; ECF No. 30-2 at 20:5–8.

[34] ECF No. 1 at ¶ 19.

This lawsuit followed. Claiming "extensive oral and maxillofacial injuries,"[35] Haughey sued Murphy Bed Depot; Murphy Bed Depot's liability insurer, Southern Owners Insurance Company; and Murphy Wallbed Systems.[36] Haughey brings an LPLA inadequate-warning claim and a Louisiana-law negligence claim.[37]

As for the LPLA claim, Haughey alleges that both Murphy Bed Depot and Murphy Wallbed Systems qualify as "manufacturers" subject to the LPLA.[38] And Haughey alleges that the Next Bed and the assembly instructions included in the Next Bed's package "were unreasonably dangerous because of inadequate warning."[39]

As for the negligence claim, Haughey alleges that Murphy Bed Depot and Murphy Wallbed Systems negligently—

(a)   "design[ed], manufactur[ed], assembl[ed], market[ed], s[old], suppl[ied], distribut[ed], and/or modif[ied]" the Next Bed and assembly instructions;[40]

(b)   "plac[ed]" the Next Bed and assembly instructions "into the stream of commerce" when they "knew, or in the existence of reasonable care should have known," that the Next Bed and its assembly instructions "posed an unreasonable risk of harm to users";[41]

(c)   "fail[ed] to discover and/or eliminate hazardous and/or defective conditions" in the Next Bed and its assembly instructions when they "knew, or in the exercise of reasonable care should have known, that the conditions presented a hazard to users";[42]

(d)   "fail[ed] to assure" that the Next Bed and its assembly instructions "were safe for the foreseeable use in the foreseeable

---

[35] *Id.*
[36] *Id.* at ¶ 1.
[37] *Id.* at ¶¶ 21–22.
[38] *Id.* at ¶ 6.
[39] *Id.* at ¶ 21.
[40] *Id.* at ¶ 22(a).
[41] *Id.* at ¶ 22(b).
[42] *Id.* at ¶ 22(c).

environment in which [the Next Bed] was being used at the time of the incident";[43]

(e)    "fail[ed] to guard against reasonably identifiable hazards associated with the use of the" Next Bed and its assembly instructions;[44]

(f)    "fail[ed] to incorporate adequate warnings . . . [that] would prevent incidents such as the one made the basis of this lawsuit";[45]

(g)    "fail[ed] to warn and/or provide adequate warnings to users . . . of the known and/or foreseeable hazards associated with the disassembly of the" Next Bed;[46]

(h)    "fail[ed] to warn and/or provide adequate warnings to users . . . as to inherent dangers associated with the disassembly of the" Next Bed;[47]

(i)    "fail[ed] to provide proper and safe instructions/warnings . . . as to the correct and safe manner to disassemble the" Next Bed;[48]

(j)    "fail[ed] to provide proper and safe instructions/warnings . . . of the danger associated with the release of uncontrolled tension onto the end user of the" Next Bed;[49]

(k)    "fail[ed] to provide instructions, manuals, warnings, and/or labels related to the safe and/or unsafe disassembly, inspection, repair and/or servicing of the" Next Bed."[50]

---

[43] *Id.* at ¶ 22(d).
[44] *Id.* at ¶ 22(e).
[45] *Id.* at ¶ 22(f).
[46] *Id.* at ¶ 22(g).
[47] *Id.* at ¶ 22(h).
[48] *Id.* at ¶22(i).
[49] *Id.* at ¶ 22(j).
[50] *Id.* at ¶ 22(k).

To support his claims, Haughey hired consulting engineer Charles Benedict as an expert.[51] In his report, Benedict opines about the cause of Haughey's injuries; the alleged "inherently defective and unreasonably dangerous" nature of the Next Bed's assembly instructions; and the need to warn Next Bed buyers about "the stored energy in the springs" that connect the Next Bed's wall-mount bracket and frame.[52]

Now, Murphy Bed Depot and Southern Owners Insurance Company move for summary judgment dismissing Haughey's LPLA inadequate-warning claim and Haughey's Louisiana-law negligence claim.[53] They contend that the Court should dismiss the inadequate-warning claim because (1) Murphy Bed Depot is not a "manufacturer" under the LPLA; (2) the Next Bed is not "unreasonably dangerous"; and (3) Haughey's injuries did not arise from a "reasonably anticipated use" of the Next Bed.[54] And they contend the Court should dismiss Haughey's negligence claim because the Next Bed is not defective.[55] Haughey opposes.[56]

Separately, Murphy Bed Depot and Southern Owners Insurance Company move to exclude Benedict's proposed testimony and report under Federal Rule of Evidence 702 because they contend that the bulk of Benedict's report concerns commonsense questions that would not help the jury. Haughey opposes.[57]

---

[51] ECF No. 44-1.
[52] *Id.* at 2–3.
[53] ECF No. 28. The other Defendant, Murphy Wallbed Systems, has not moved for summary judgment. *See generally* Docket, No. 23-CV-865 (E.D. La.) (Mar. 13, 2024).
[54] ECF No. 28-1 at 1.
[55] *Id.*
[56] ECF No. 30.
[57] ECF No. 29.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

"In reviewing the record, 'the [C]ourt must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

"[W]here the nonmovant bears the burden of proof at trial," as Haughey does here, "the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (quoting *Lindsey v. Sears Roebuck & Co.*, 16 F.3d

616, 618 (5th Cir. 1994)) (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate." *Guillot ex rel T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012)) (internal quotation marks omitted).

"There can be no genuine dispute as to a material fact where a party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted).

"Speculative theories cannot defeat a motion for summary judgment." *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). Nor can the nonmovant "defeat summary judgment with 'conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence.'" *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). "Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine issue of material fact exists." *Id.* (citing *Little*, 37 F.3d at 1075). The Court "is free to grant summary judgment on the basis of any facts shown by competent evidence in the record." *Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 533 (5th Cir.

10

2023) (quoting *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994)) (internal quotation marks omitted).

**B.    Federal Rule of Evidence 702**

District courts "have broad discretion in deciding the admissibility of expert testimony" under Rule 702 of the Federal Rules of Evidence. *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 807 (5th Cir. 2018). *Daubert v Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Reitz v. Woods*, 85 F.4th 780, 787 (5th Cir. 2023) (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002)).

"Under *Daubert*, Rule 702 charges [district] courts to act as gate-keepers." *Id.* (quoting *Pipitone*, 288 F.3d at 243–44) (internal quotation marks omitted). In that gate-keeping role, district courts "mak[e] a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* (quoting *Pipitone*, 288 F.3d at 243–44) (internal quotation marks omitted). That "*Daubert* framework governing the admissibility of expert witness testimony is effectively codified in Rule 702." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022).

Rule 702 instructs that "[a] witness who is qualified as an expert by knowledge, skill, experience or education may testify in the form of an opinion or otherwise" if the party offering the expert's testimony shows "that it is more likely than not" that—

11

> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

"The object of Rule 702 is to protect juries from unreliable and irrelevant expert testimony." *In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th at 268 (citing *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). As a result, "[p]arties offering expert testimony must prove [1] the expert is qualified and will offer [2] relevant and [3] reliable testimony." *Kim v. Am. Honda Motor Co.*, 86 F.4th 150, 160 (5th Cir. 2023) (citing *Daubert*, 509 U.S. at 590–91).

The reliability inquiry asks if the expert's reasoning or methodology is valid. *See Daubert*, 509 U.S. at 592–93. "To be reliable, expert testimony must be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th at 268 (quoting *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019)).

Courts evaluating the reliability of expert testimony "may" consider these four "non-exclusive" factors: "(1) whether the expert's theory or technique can or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4)

whether the theory or technique is generally accepted in the relevant scientific community." *Kim*, 86 F.4th at 160 (citing *Daubert*, 509 U.S. at 593–94). But these "*Daubert* factors are not 'a definitive checklist or test,' and the analysis is 'flexible.'" *Id.* (quoting *Daubert*, 509 U.S. at 594–95). Ultimately, "[t]o establish reliability[,] an expert opinion must 'employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Sandifer*, 907 F.3d at 808 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

The relevance inquiry considers the "fit" between the expert's testimony and the facts of the case. *See Daubert*, 509 U.S. at 591–92. "To be relevant, the expert's 'reasoning or methodology [must] be properly applied to the facts in issue.'" *Puga*, 922 F.3d at 293 (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (per curiam)). "[T]he court's main focus" in the relevance inquiry "should be on determining whether the expert's opinion will assist the trier of fact." *Id.* at 294 (citing *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 449 (5th Cir. 1990)).

Expert testimony "assist[s] the trier of fact" if it "'bring[s] to the jury more than the lawyers can offer in argument.'" *Id.* at 294–95 (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)). But expert testimony does not assist the trier of fact if it goes to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). If a jury can "adeptly assess th[e] situation using only their common experience and knowledge," expert testimony is not needed. *Peters*, 898 F.2d at 449. "'[A]n expert may *never* render conclusions of law,'" *Reitz*, 85 F.4th at 787 (quoting *Goodman v. Harris*

13

*Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009)), "or provide opinions on legal issues," *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (citing *Goodman*, 571 F.3d at 399).

## III.   ANALYSIS

### A.   Motion for Summary Judgment

Murphy Bed Depot and Southern Owners Insurance Company move for summary judgment dismissing Haughey's LPLA inadequate-warning claim and Haughey's Louisiana-law negligence claim.

#### 1.   LPLA Inadequate-Warning Claim

Murphy Bed Depot and Southern Owners Insurance Company seek summary judgment dismissing Haughey's LPLA inadequate-warning claim. Under the LPLA, "[t]he *manufacturer* of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product *unreasonably dangerous* when such damage arose from a *reasonably anticipated use* of the product by the claimant or another person or entity." LA. STAT. ANN. § 9:2800.54(A) (emphasis added). Murphy Bed Depot and Southern Owners Insurance Company seek summary judgment dismissing this inadequate-warning claim on the independent grounds that (1) Murphy Bed Depot is not a "manufacturer"; (2) the Next Bed is not "unreasonably dangerous"; and (3) Haughey's injuries did not arise from a "reasonably anticipated use" of the Next Bed. The Court takes each argument in turn.

14

### a.    "Manufacturer"

First, Murphy Bed Depot and Southern Owners Insurance Company submit that they are entitled to summary judgment dismissing Haughey's inadequate-warning claim because the LPLA imposes liability only on a "manufacturer," *see* LA. STAT. ANN. § 9:2800.54(A), and Murphy Bed Depot is not a "manufacturer."

A "manufacturer" under the LPLA "means a person or entity who is in the business of manufacturing a product for placement into trade or commerce." LA. STAT. ANN. 9:2800.53(1). "'Manufacturing a product' means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product." *Id.* But the term "'[m]anufacturer' also means"—

(a)   *A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.*

(b)   *A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.*

(c)   A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.

(d)   *A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer.* The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.

*Id.* § 9:2800.53(1)(a)–(d) (emphasis added).

Here, the parties do not dispute that Murphy Bed Depot is not the actual manufacturer or designer of the Next Bed. Instead at issue is whether Murphy Bed Depot nonetheless qualifies as a "manufacturer" under Section 9:2800.53(1) of the Louisiana Revised Statutes on at least one of three theories: (1) as an "apparent manufacturer" under subsection (a) on the ground that Murphy Bed Depot held itself out as a manufacturer of the Next Bed; (2) as a seller of the Next Bed that exercised control or influence over the design, construction, or quality of the damage-causing characteristic of the Next Bed under subsection (b); or (3) as an alter ego of the Next Bed's alien manufacturer, TECview Group Holdings, under subsection (d). The Court begins and ends its analysis with the apparent manufacturer theory of subsection (a).

Subsection (a) of Section 9:2800.53(1) instructs that "[a] person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product" is considered a manufacturer. LA. STAT. ANN. § 9:2800.53(1)(a). This provision is commonly called the apparent-manufacturer doctrine. *Martin v. Pham Le Bros., LLC*, 21-159 (La. App. 5 Cir. 9/22/21); 330 So. 3d 346, 352. The apparent-manufacturer doctrine "allows a plaintiff to hold a seller or distributor liable for injuries caused by a product defect[ ] when the seller leads a reasonable consumer to believe that it is the manufacturer of the product." *Id.* Courts consider whether a seller held itself out as a manufacturer under the apparent-manufacturer doctrine "from the viewpoint of the purchasing public, and in light of circumstances as of the time of purchase." *Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 896 (5th

Cir. 2010) (quoting *Hebel v. Sherman Equip.*, 442 N.E. 2d 199, 203 (Ill. 1982)); *accord, e.g., Martin*, 330 So. 3d at 352 ("agree[ing]" that "a court determines whether a seller held itself out as the manufacturer of the product by considering the viewpoint of the purchasing public and in light of the circumstances as of the time of purchase").

"As a general rule, it takes very little under Louisiana law to present a jury issue if a product does not bear the actual manufacturer's mark." *Chevron USA, Inc.*, 604 F.3d at 896. If the defendant's "actions give the buying public a basis to assume that it may be the manufacturer of a product," "a jury will usually be within its province to conclude that the [defendant] held itself out as the product's manufacturer, even though the indications may be less than clear and the ambiguity as to the actual manufacturer may subsequently be clarified." *Id.* at 897.

Applying those principles here, the Court concludes that there is a genuine dispute of material fact as to whether Murphy Bed Depot held itself out as a manufacturer of the Next Bed and thus qualifies as a "manufacturer" of the Next Bed under the apparent-manufacturer doctrine of Subsection (a) of Section 9:2800.53(1).

The threshold to create a fact question on the apparent-manufacturer doctrine's application is low here. *See Chevron USA, Inc.*, 604 F.3d at 896. The Next Bed that Haughey bought from Murphy Bed Depot's website bears only the mark of Murphy Wallbed Systems: The Next Bed includes "MWBS" initials on its slat holders, and Murphy Wallbed Systems is named as the copyright owner on the Next Bed's assembly instructions. The Next Bed does not bear the mark of the Next Bed's "actual manufacturer," TECview Group Holdings. *Id.* at 896. And "the identity" of the Next

Bed's actual manufacturer "is unclear in the sale of the product" on Murphy Bed Depot's website. *Allstate Ins. Co. v. Fred's Inc.*, 44,508 (La. App. 2 Cir. 3/17/10); 33 So. 3d 976, 985.  That means "it takes very little" for Haughey "to present a jury issue" under the apparent-manufacturer doctrine here. *Chevron USA, Inc.*, 604 F.3d at 896.

Haughey has done the "very little" that he must "to present a jury issue" on the apparent-manufacturer doctrine. *Id.* He first points to Murphy Bed Depot's representation on its website that Murphy Bed Depot "took the basic principle that Murphy brought forward, [and] improved, updated, and redesigned it using the latest technology and modern manufacturing procedures."[58] Haughey next points to his deposition testimony stating that he thought Murphy Bed Depot manufactured the Next Bed because of promotional videos on Murphy Bed Depot's YouTube page that referred to the Next Bed as the "Murphy Bed Depot bed."[59] Viewing these facts in the light most favorable to Haughey, and drawing all reasonable inferences in Haughey's favor, *see Reeves*, 530 U.S. at 150, the Court concludes that a reasonable jury could find that Murphy Bed Depot held itself out as a manufacturer of the Next Bed. Summary judgment on the "manufacturer" element is therefore inappropriate.

---

[58] ECF No. 29-1 at 1.

[59] ECF No. 30-3 at 16:23–17:5. Murphy Bed Depot disputes Haughey's testimony and submits summary-judgment evidence supporting its claim that no video on its YouTube page refers to a Next Bed as the "Murphy Bed Depot bed." ECF No. 41-1 at ¶ 7. In this summary-judgment posture, however, the Court must resolve this genuine factual dispute in Haughey's favor. *See Little*, 37 F.3d at 1075.

Murphy Bed Depot's principal counterargument does not persuade the Court that summary judgment should be granted. For that counterargument, Murphy Bed Depot contends that the Court should not consider Murphy Bed Depot's website's representations about "improv[ing], updat[ing], and redesign[ing]" the Next Bed because Haughey did not actually see those representations before buying the bed.[60]

The Court is not convinced. The question whether a seller or distributor has held itself out as a manufacturer under the apparent-manufacturer doctrine is an objective one; the answer turns not only on the specific "circumstances as of the time of purchase" but also on "the viewpoint of the purchasing public." *Chevron, USA, Inc.*, 604 F.3d at 896 (quoting *Hebel*, 442 N.E.2d at 203); *accord, e.g.*, *Penn v. Inferno Mfg. Corp.*, 199 So. 2d 210, 215 (La. Ct. App. 1st Cir. 1967) (asking whether "the public is induced by its reasonable belief" about the manufacturer's identity); *Media Prod. Consultants, Inc. v. Mercedez-Benz of N. Am., Inc.*, 262 So. 2d 377, 380 (La. 1972) (holding distributor liable as a manufacturer "[i]nsofar as the American consumer is concerned"); *Chappuis v. Sears Roebuck & Co.*, 358 So. 2d 926, 930 (La. 1978) (holding retailer responsible as a manufacturer because the retailer "held the product out to the public as its own"). Murphy Bed Depot made the at-issue representations on its website to the "purchasing public" and so those representations are relevant to the apparent-manufacturer inquiry—even if Haughey did not see them pre-purchase.

---

[60] ECF No. 41 at 2.

Neither *Martin* nor *Frierson* compels a different conclusion. It is true that *Martin* observed that a catalog the plaintiff did not see "d[id] not indicate" that the defendant "held itself out as a manufacturer." 330 So. 3d at 353. But the import of the court's observation and the contours of the court's reasoning are not clear: The court offered no citation supporting its observation, and the court did not reconcile its observation with the otherwise objective character of its apparent-manufacturer inquiry. *Id.* Indeed, the court went on to analyze apparent-manufacturer status from the objective standpoint of "reasonable consumers." *Id.* at 358. The court ultimately reversed the denial of summary judgment on apparent-manufacturer grounds because the court concluded that "[t]here is simply no evidence to indicate that the alleged catalog page . . . was available at the time consumers, such as [the plaintiff], were purchasing" the product. *Id.* Here, by contrast, Haughey's summary-judgment evidence, viewed in his favor, shows that the representations on Murphy Bed Depot's website were indeed "available at the time" Haughey bought the Next Bed.[61] *Id.*

*Frierson* does not control the apparent-manufacturer analysis on this sub-issue for substantially similar reasons. There, the court concluded that a brochure not included with a product "at the point of sale" was "not relevant to whether [the defendant] held itself out as a manufacturer." *Frierson v. Spanset, Inc.*, No. 09-CV-3153, 2010 WL 11537999, at *3 (E.D. La. Aug. 18, 2010). Here, however, summary-judgment evidence indicates that the at-issue representations existed on Murphy Bed Depot's website—the "point of sale" for Haughey's purchase—at the time of sale.

---

[61] ECF No. 30-2 at 11:1–10.

In sum, the Court concludes that there is a genuine dispute as to whether Murphy Bed Depot qualifies as a "manufacturer" under the apparent-manufacturer doctrine effectively codified in Section 9:2800.53(1)(a). Because the Court concludes that there is a genuine dispute as to Murphy Bed Depot's status as a "manufacturer" under Section 9:2800.53(1)(a), the Court need not consider whether Murphy Bed Depot qualifies as a "manufacturer" under Sections 9:2800.53(1)(b) or 9:2800.53(1)(d).

### b. "Unreasonably Dangerous"

Next, Murphy Bed Depot and Southern Owners Insurance Company seek summary judgment dismissing Haughey's inadequate-warning claim because the LPLA imposes liability only on manufacturers of products that are "unreasonably dangerous," LA. STAT. ANN. § 9:2800.54(A), and Haughey's Next Bed is not "unreasonably dangerous" for lack of an adequate warning. Murphy Bed Depot and Southern Owners Insurance Company contend that no warning was needed because the danger presented by the Next Bed is or should be obvious to the ordinary user.

The LPLA holds product manufacturers liable "for damage proximately caused by a characteristic of the product that renders the product *unreasonably dangerous* when such damage arose from a reasonably anticipated use of the product." LA. STAT. ANN. § 9:2800.54(A) (emphasis added). There are four ways that a product may be "unreasonably dangerous" under the LPLA, *see* LA. STAT. ANN. § 9:2800.54(B)(1)–(4), but only one way is relevant here: A product is "unreasonably dangerous" if "an adequate warning about the product has not been provided as provided in [LA. STAT. ANN. § 9:2800.57]." LA. STAT. ANN. § 9:2800.54(B)(3).

Section 9:2800.57(A) in turn specifies when, exactly, a product is "unreasonably dangerous" for lack of an adequate warning:

> A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

LA. STAT. ANN. § 9:2800.57(A).

Critically, however, "[a] manufacturer is not required to provide an adequate warning about his product" in two circumstances:

(1)     The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or

(2)     The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.

LA. STAT. ANN. § 9:2800.57(B)(1)–(2). "To be relieved of the duty to warn" under Section 9:2800.57, "a manufacturer need not prove [the plaintiff's] actual knowledge of the danger." *Goins v. Galion Mfg. Co., a Div of Dresser Indus.*, 626 So. 2d 1200, 1204 (La. Ct. App. 3d Cir. 1993), *writ denied*, 630 So. 2d 792 (La. 1994). "The manufacturer must only show that the user should have known of the danger." *Id.*[62]

---

[62] The parties have not briefed—and so the Court does not now definitively decide–the question whether an LPLA plaintiff or defendant bears the burden of proof as to Section 9:2800.57(B)'s exceptions to Section 9:2800.57(A)'s warning requirement. Although Section 9:2800.57(B) is silent on that question, at least one case suggests the burden is on the defendant. *See Goins*, 626 So. 2d at 1204.

Here, Murphy Bed Depot and Southern Owners Insurance Company have not directed the Court to summary-judgment evidence that would allow the Court to hold, as a matter of law, that Haughey reasonably should have known of the danger presented by the Next Bed such that no warning needed to be provided.[63] To be sure, Murphy Bed Depot and Southern Owners Insurance Company contend in their opening brief that "[i]t should have been obvious to Haughey" that the Next Bed's springs would recoil when Haughey disassembled the bed in the "down" position.[64] But Murphy Bed Depot and Southern Owners Insurance Company do not direct the Court to summary-judgment evidence supporting the assertion.[65] On the other hand, Haughey has pointed to summary-judgment evidence that, taken as true and viewed in his favor, shows that the Next Bed did not include warnings against assembling the Next Bed in the "down" position; that the Next Bed did not include any instructions at all for disassembly; and that Haughey did not know how the product worked.[66] Viewing these facts in the summary-judgment record in the light most favorable to Haughey, and drawing all reasonable inferences in Haughey's favor, *see Reeves*, 530 U.S. at 150, the Court concludes that a reasonable jury could find that Haughey should not reasonably have known of the danger the Next Bed presented.[67]

---

[63] ECF No. 28-1 at 9.

[64] *Id.*

[65] *Id.*

[66] ECF No. 30.

[67] The Court emphasizes that its holding is limited to the briefing and summary-judgment record before it. To be clear, the Court does *not* affirmatively hold that Murphy Bed Depot owed an all-purpose duty to warn about the alleged danger presented by the Next Bed's springs. The Court holds only that, on this record and briefing, Murphy Bed Depot has not carried its summary-judgment burden to show that it was not required to provide a warning under Section 9:2800.57(B).

Accordingly, Murphy Bed Depot and Southern Owners Insurance Company have not carried their burden to show the absence of a genuine factual dispute as to whether the alleged danger presented by the Next Bed is or reasonably should be obvious to the ordinary user of the Next Bed such that Murphy Bed Depot owed no duty to warn under Section 9:2800.57(B). Murphy Bed Depot and Southern Owners Insurance Company have therefore not shown that they are entitled to summary judgment on the "unreasonably dangerous" element of Haughey's LPLA claim.[68]

### c.    "Reasonably Anticipated Use"

Next, Murphy Bed Depot and Southern Owners Insurance Company contend that they are entitled to summary judgment dismissing Haughey's inadequate-warning claim because the LPLA imposes liability only for damage arising "from a reasonably anticipated use of the product," LA. STAT. ANN. § 9:2800.54(A), and Haughey's injuries did not arise from a "reasonably anticipated use" of the Next Bed.

---

[68] In their reply brief, Murphy Bed Depot and Southern Owners Insurance Company cite two unpublished opinions of the Court of Appeals of Minnesota to support their argument that no warning needed to be provided. ECF No. 41 at 5 (citing *Hoeg v. Shore-Master, Inc.*, No. C9-94-508, 1994 WL 593919, at *1 (Minn. Ct. App. Nov. 1, 1994); *Zacharias v. City of Bloomington*, No. C6-98-863, 1998 WL 846506, at *4 (Minn. Ct. App. Dec. 8, 1998)). But neither opinion dictates a different outcome on this summary-judgment record. *Zacharias* affirmed a summary judgment dismissing the negligence claims of a plaintiff injured by a spring-driven exercise rower on the ground that the danger the rower's spring presented was "obvious." 1998 WL 846506, at *4. The summary-judgment record there included the plaintiff's testimony that "she understood how a spring works," and the at-issue product included a warning against stretching the product. *Id.* at *1. Neither is true of the summary-judgment record here. *Hoeg*, for its part, reversed a denial of JNOV in a negligence suit by a plaintiff who was hit in the eye by a spring that dislodged from a boat-lift canopy he was installing; the court reasoned that a JNOV should have been granted because the defendant "had no duty to warn of the open and obvious dangers of a spring." 1994 WL 593919, at *2. The duty-to-warn analysis there, however, stemmed from the "established facts" of a trial record that differs from the summary-judgment record here. *Id.* at *1.

A "reasonably anticipated use" under the LPLA "means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." LA. STAT. ANN. § 9:2800.53(7). "Under [the] LPLA, whether a use is reasonably anticipated is an objective standard ascertained from the manufacturer's viewpoint at the time of manufacture." *Matthews v. Remington Arms Co.*, 641 F.3d 635, 647 (5th Cir. 2011) (citing *Payne v. Gardner*, 2010-2627 (La. 2/18/122); 56 So. 3d 229, 231). "'Reasonably anticipated use is more restrictive than the broader, pre-LPLA standard of 'normal use,' and it does not suggest manufacturer liability for every conceivable foreseeable use of a product." *Id.* at 646–47 (brackets omitted) (quoting *Delphen v. Dep't of Transp. & Dev.*, 94-1261 (La. App. 4 Cir. 5/24/95); 657 So. 2d 328, 333–34). "Obviously dangerous uses and uses contrary to industry practice are not reasonably anticipated." *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods., Inc.*, 951 F.3d 248, 724 (5th Cir. 2020) (citing *Kampen v. Am. Isuzu Motors, Inc.*, 157 F.3d 306, 312 (5th Cir. 1998) (en banc)). "Courts do not define a product's 'use' at a high level of generality and may consider the user's negligent conduct." *Id.* (citing *Kampen*, 157 F.3d at 312).

Haughey presented evidence sufficient to create a genuine factual dispute on this element. Two steps illustrate why. As for step one, a reasonable jury could infer from the summary-judgment record that Murphy Bed Depot should have reasonably anticipated that a Next Bed buyer will disassemble his Next Bed at some point. To that end, Murphy Bed Depot's corporate representative, Zachary Anderson, agreed that "it is possible that a buyer of a Next Bed might want to disassemble the bed to

relocate it to another room or home."[69] And Murphy Bed Depot has received at least one question from a Next Bed buyer about Next Bed disassembly.[70] Murphy Bed Depot should thus reasonably expect ordinary users to disassemble their beds. As for step two, because the Next Bed did not include any instructions for disassembly or any warnings against disassembly in the "down" (i.e., in use) position, a reasonable jury could also infer that Murphy Bed Depot should have reasonably anticipated that Next Bed buyers will disassemble their beds in the "down" position, as Haughey did.

Accordingly, viewing the summary-judgment record and drawing all reasonable inferences in Haughey's favor, the Court concludes that a reasonable jury could find that Haughey's disassembly of the Next Bed in the "down" position was reasonably anticipated by Murphy Bed Depot. Summary judgment is therefore inappropriate on the "reasonably anticipated use" element of Haughey's LPLA claim.

### 2.    Negligence Claim

Murphy Bed Depot and Southern Owners Insurance Company submit that they are entitled to summary judgment dismissing Haughey's negligence claim.[71] They contend that Murphy Bed Depot is a non-manufacturing seller not liable in tort absent a showing it knew or should have known the product was defective and failed to declare it.[72] Because Haughey does not claim the Next Bed is defective, they

---

[69] ECF No. 30-2 at 20:9–13.
[70] *Id.* at 21:13–21.
[71] ECF No. 28-1 at 10.
[72] *Id.*

reason, Haughey's negligence claim necessary fails.[73] Haughey's opposition brief does not address this argument or otherwise oppose dismissal of his negligence claim.[74]

Haughey has abandoned his negligence claim. A plaintiff is deemed to "abandon" or "waive" a claim or theory he pleaded in his complaint if he fails to defend against dismissal of the claim or theory in response to a dispositive motion. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding plaintiff "abandoned" a claim by failing to defend against its dismissal in response to motions to dismiss); *Batterton v. Tex. Gen. Land Off.*, 783 F.2d 1220, 1224–25 (5th Cir.), *reh'g denied*, 798 F.2d 316 (5th Cir. 1985) (concluding that a pleaded theory was "waived" when it was not raised in opposition to a motion for summary judgment). Because Haughey failed to defend against dismissal of his negligence claim in response to the motion for summary judgment, Haughey has abandoned the claim. The Court therefore grants summary judgment dismissing the negligence claim.

*     *     *

In sum, the Court grants the motion in part and denies it in part. The Court grants the motion as to the negligence claim because Haughey abandoned it by failing to brief it in opposition to the motion. But the Court denies the motion as to the LPLA inadequate-warning claim. Murphy Bed Depot and Southern Owners Insurance Company have not shown that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law on the "manufacturer," "unreasonably dangerous," or "reasonably anticipated use" components of that claim.

---

[73] *Id.*
[74] ECF No. 30 at 1–25.

**B.     Motion to Exclude Benedict's Testimony and Report**

Murphy Bed Depot contends that the Court should exclude Benedict's proposed testimony and report under Federal Rule of Evidence 702 for three principal reasons: first, Benedict's proposed testimony and report would not help the jury because his proposed testimony and report concern commonsense issues the jury can adeptly assess on its own; second, Benedict's proposed testimony and report feature inadmissible legal conclusions; and third, Benedict's proposed testimony and report evaluate instructions Haughey did not use. The Court takes each reason in turn.[75]

**1.     Helping the Jury**

The Court agrees with Murphy Bed Depot that some of Benedict's proposed testimony would bring nothing "more than the lawyers can offer in argument" and so must be excluded. *Salas*, 980 F.2d at 305. For example, Benedict's proposed testimony that "Murphy Bed Depot failed to include disassembly instructions in their Assembly Instructions" requires no specialized knowledge or expertise of any kind.[76] That proposed testimony is therefore excluded. And should this case go to trial, the Court will scrutinize Benedict's testimony to ensure that Benedict does not "become nothing more than an advocate of policy before the jury." *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986).

---

[75] This Order and Reasons does not decide whether Benedict is qualified to provide expert testimony, nor whether such testimony will be deemed reliable. *See* FED. R. EVID. 702. The Court's decision here addresses solely the relevance of the opinions proffered in Benedict's report. ECF No. 44-1.

[76] *Id.* at 3 opinion 3.

The Court declines to exclude Benedict's proposed testimony and report in their entirety, however, on the ground that they would not help the jury understand the evidence or determine a fact in issue. *See* FED. R. EVID. 702(a). Benedict's testimony is "unnecessary" if jurors can "adeptly assess th[e] situation using only their common experience and knowledge." *Peter*s, 898 F.2d at 450. That means Benedict must "bring to the jury more than the lawyers can offer in argument." *Salas*, 980 F.2d at 305. Importantly, however, "the 'helpfulness threshold [under Rule 702(a)] is low: it is principally a matter of relevance.'" *Puga*, 922 F.3d at 294 (ellipsis omitted) (quoting *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 459 n.14 (5th Cir. 2013) (en banc)).

Here, the Court concludes that at least some of Benedict's proposed testimony may clear that low bar, and thus defers its judgment on the admissibility of such testimony until the Court can properly assess its relevance and reliability in the context of trial. For example, Benedict opines about Murphy Bed Depot's alleged failure to perform certain engineering analyses and how that failure contributed to Haughey's injuries.[77] Benedict also opines about Murphy Bed Depot's alleged violation of "accepted engineering safety standards."[78] These opinions are not "well within the common sense understanding of jurors," *Vogler*, 352 F.3d at 155, and thus may be admissible under Rule 702(a). Furthermore, Benedict opines about the stored energy in the springs when the Next Bed is in the down position.[79] Again, such

---

[77] ECF No. 44-1 at 3 opinions 9, 10, 11, 12.
[78] *Id.* at 3 opinion 6.
[79] *Id.* at 2 fact 18.

testimony, when evaluated in connection with the broader trial, may clear the low

bar of helpfulness to the jury in understanding why the springs recoiled when the

Next Bed was removed from the wall.[80] *See Puga*, 922 F.3d at 294. The Court thus

defers ruling on the helpfulness of Benedict's proposed testimony and report as to the

points outlined above.[81]

###     2.    Inadmissible Legal Conclusions

Murphy Bed Depot next contends the Court should exclude Benedict's report

and testimony because they consist of inadmissible legal conclusions. The Court

agrees that Benedict's report features inadmissible legal conclusions that, without

supporting evidence, "would merely tell the jury what result to reach." *United States*

*v. Oti*, 872 F.3d 678, 692 (5th Cir. 2017) (quoting *Salas*, 980 F.2d at 305 n.4).

---

[80] Murphy Bed Depot points the Court to maritime-personal-injury cases that are instructive but do not ultimately compel the exclusion of testimony regarding the function of the springs. ECF No. 27-1 at 3 (citing *Tercero v. Oceaneering Int'l, Inc.*, No. 17-CV-7438, 2018 WL 2100637 (E.D. La. Feb. 8, 2018) (Africk, J.); *Spaid v. Cheramie Marine, LLC*, No. 16-CV-14169, 2017 WL 2688226 (E.D. La. June 22, 2017) (Vance, J.); *Oatis v. Diamond Offshore Mgmt. Co.*, No. 09-CV-3267, 2010 WL 936449 (E.D. La. Mar. 12, 2010) (Engelhardt, J.); *Thomas v. Glob. Explorer, LLC*, No. 02-CV-1060, 2003 WL 943645 (E.D. La. Mar. 3, 2003) (Vance, J.)). Each case concerns a plaintiff falling off a ladder, a stepstool, or a pipe rack, or falling through an open hole. *See Tercero*, 2018 WL 2100637, at *1 (stepstool); *Spaid*, 2017 WL 2688226, at *1 (open hole); *Oatis*, 2010 WL 936449, at *1 (pipe rack); *Thomas*, 2003 WL 943645, at *1 (ladder). The mechanics underlying the Next Bed's operation, and the circumstances of Haughey's injury, are more complicated than a fall off a stepstool, a ladder, or a pipe rack, or a fall through an open hole. *Cf. Meaux v. Cooper Consol., LLC*, No. 19-CV-10628, 2021 WL 3553537, at *4 (E.D. La. Apr. 22, 2021) (Ashe, J.) (denying motion to exclude expert testimony on helpfulness grounds; distinguishing *Tercero*, *Spaid*, and *Thomas*); *Austin v. Sontheimer Offshore/Catering Co.*, 23-CV-1602, 2024 WL 217498, at *4 (E.D. La. Jan. 19, 2024) (Africk, J.) (same; distinguishing *Thomas*). Moreover, the Court rejects Haughey's argument that those authorities are *per se* unhelpful because they are maritime-personal-injury cases (not products-liability cases), and because four of them involve the same expert. The evidentiary principles driving the decisions in the cases Murphy Bed Depot cites are not limited in the way Haughey suggests. By its own terms, Rule 702(a)'s helpfulness requirement applies across the board to all proposed expert testimony, and the Fifth Circuit has not atextually interpreted that requirement to apply only to particular cases or experts.

[81] Although it does not bear on the Court's purely legal analysis under Federal Rule of Evidence 702, the Court notes that Haughey is not the only party who has hired an engineer to testify as an expert in this case: Murphy Wallbed Systems has also disclosed an expert engineer. ECF No. 18 at 1.

While "[a]n opinion is not objectionable just because it embraces an ultimate issue," FED. R. EVID. 704(a), Benedict's report includes some unsupported and inadmissible legal conclusions. For example, without reference to any supporting facts, Benedict opines that Murphy Bed Depot's assembly instructions are "inherently defective" and "unreasonably dangerous."[82] These are legal conclusions drawn from the text of the LPLA. *See* LA. STAT. ANN. §§ 9:2800.54(A) & 9:2800.54(B)(3). They are thus inadmissible as stated. *Cf. Zaslow v. Louisville Ladder, Inc.*, No. 18-CV-80091, 2020 WL 11420573, at *3 (S.D. Fla. Feb. 7, 2020) (excluding testimony that product was "defective" and that its design was "unreasonable"). Benedict elsewhere opines that Murphy Bed Depot's failure to provide disassembly instructions "is the proximate cause" of Haughey's injuries.[83] This too is a pure legal conclusion, *see Vince v. Koontz*, 16-521 (La. App. 5 Cir. 2/8/17); 213 So. 3d 448, 455 (explaining that "[p]roximate cause is a question of law"), which Benedict "cannot render," *Renfroe*, 974 F.3d at 598 (quotation omitted); *accord, e.g.*, *Moore v. Wright Med. Tech., Inc.*, No. 1:14-CV-62, 2016 WL 1316716, at *9–10 (S.D. Ga. Mar. 31, 2016) (excluding an expert's opinions that a product had design and warning defects that caused the plaintiff's injury as inadmissible legal conclusions).

---

[82] ECF No. 44-1 at 2 opinion 1. Benedict elsewhere describes the "stored energy in the springs" as "inherently dangerous" without reference to underlying facts. *Id.* at 3 opinions 6, 7, 8, 12, 13, 14. The phrase "inherently dangerous" appears to be a typographical error for the statutory term "unreasonably dangerous." *See* LA. STAT. ANN. § 9:2800.54(B). Accordingly, for essentially the same reasons that Benedict may not properly opine that the assembly instructions or the springs are "unreasonably dangerous," he may not properly opine that the springs are "inherently dangerous."

[83] *Id.* at 3 opinion 4.

Benedict also opines about what he concludes was "foreseeable" to Murphy Bed Depot and about what he concludes Murphy Bed Depot "knew or should have known."[84] But Benedict cites no facts supporting these opinions; they are legal conclusions that "merely tell the jury what result to reach." *Salas*, 980 F.2d at 305 n.4; *accord, e.g.*, *Cowden v. BNSF Ry. Co.*, No. 4:08-CV-1534, 2013 WL 54429226, at *9 (E.D. Mo. Sept. 30, 2013) (excluding expert testimony about whether defendant knew or should have known of a defect as an inadmissible legal conclusion); *Mann v. Taser Int'l, Inc.*, No. 4:05-CV-0273, 2008 WL 11423983, at *23 (N.D. Ga. June 30, 2008) (excluding expert testimony on causation and foreseeability as inadmissible legal conclusions).

Such opinion testimony may suffer from an additional problem: Rule 403. Evidence is inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Expert opinion evidence may be excluded if it confuses the issue and risks unfair prejudice by, for instance, merely telling the jury what results to reach. *See United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977). In this case, permitting Benedict to share conclusions of law with little or no basis in fact risks allowing Benedict to put his imprimatur on Plaintiff's case.

---

[84] *Id.* at 3 opinions 2, 5, 7, 8, 13, 14.

Accordingly, Benedict will not be permitted to offer unsupported legal conclusions at trial, nor trial testimony inadmissible under Rule 403. "Depending on how the actual questions and answers are framed," however, Benedict's trial testimony on causation and foreseeability "might or might not be objectionable—a circumstance this Court cannot predict in a vacuum." *Shell Offshore, Inc. v. Tesla Offshore, L.L.C.*, No. 13-CV-6278, 2015 WL 5714622, at *5 (E.D. La. Sept. 28, 2015) (Africk, J.). "Accordingly, the Court will be in a better position at trial to assess whether [Benedict] in fact reaches legal conclusions [that] are properly the province of the jury, or whether he instead offers admissible opinions 'calculated to suggest to the jury a particular legal conclusion.'" *Singleton v. Fieldwood Energy, LLC*, No. 15-CV-5558, 2016 WL 3940279, at *3 (E.D. La. July 21, 2016) (Africk, J.) (quoting *Shell Offshore, Inc.*, 2015 WL 5714622, at *5).

### 3.   Evaluating the Wrong Instructions

Finally, Murphy Bed Depot contends that the Court should exclude as irrelevant any testimony about the adequacy of *Murphy Bed Depot*'s online assembly instructions—instructions Haughey did not consult when installing the wall-mounted bed frame.[85] It is undisputed that Haughey instead assembled the bed frame using different instructions provided by a different company; Haughey used the *Murphy Wallbed Systems* instructions included in the Next Bed's package.[86]

---

[85] ECF No. 28-3 at 19:16–20:10, 21:5–17.
[86] *Id.*

33

Benedict nonetheless opines that Murphy Bed Depot's online instructions are "inherently defective and unreasonably dangerous for their intended use."[87]  As the party offering that testimony, Haughey "must prove" its relevance. *Kim*, 86 F.4th at 160. Evidence is relevant if "it has any tendency to make a fact" that "is of consequence in determining the action" "more or less probable than it would be without the evidence." FED. R. EVID. 401. Haughey has not shown the relevance of Benedict's opinions about the adequacy of online Murphy Bed Depot instructions that Haughey did not use to assemble or disassemble the wall-mounted bed frame.

Haughey's counterarguments are unpersuasive. First, Haughey contends that Murphy Bed Depot "did not disclose its editing controls over the [Murphy Bed Systems] instructions" until after Benedict submitted his expert report.[88] But Haughey does not explain how the alleged failure of Murphy Bed Depot to timely disclose its "editing controls" over the pre-packaged Murphy Wallbed Systems assembly instructions (which Haughey used) makes Benedict's testimony about the adequacy of the Murphy Bed Depot online instructions (which Haughey did not use) relevant.

Second, Haughey contends that Benedict's proposed testimony about the inadequacy of the assembly instructions on Murphy Bed Depot's website is relevant because it shows Murphy Bed Depot had "editing control" over the pre-packaged Murphy Wallbed Systems assembly instructions and that Murphy Bed Depot had a

---

[87] ECF No. 44-1 at 2 proposed opinion 1.
[88] ECF No. 29 at 9.

duty to warn.[89] But Benedict's report does not actually address either of those issues: It does not include any opinion that fairly encompasses (1) Murphy Bed Depot's alleged "editing control" over the pre-packaged Murphy Wallbed Systems instructions or (2) any duty to warn arising from a customer request for disassembly instructions. Instead, Benedict's report simply opines that Murphy Bed Depot's assembly instructions "are inherently defective and unreasonably dangerous for their intended use."

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion[90] of Defendants Murphy Bed Depot and Southern Owners Insurance Company for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion for summary judgment is granted as to Haughey's negligence claims; Haughey's negligence claims against Murphy Bed Depot and Southern Owners Insurance Company are dismissed with prejudice. The motion for summary judgment is denied as to the LPLA inadequate-warning claim.

---

[89] *Id.* at 8–9.
[90] ECF No. 28.

**IT IS FURTHER ORDERED** that the motion[91] of Defendants Murphy Bed Depot and Southern Owners Insurance Company to exclude the testimony and report of Haughey's consulting engineer Charles E. Benedict is **GRANTED IN PART** and **DEFERRED IN PART**. The motion is granted insofar as Benedict may not opine on matters for which no specialized knowledge or expertise is required; may not offer any opinion testimony at trial that amounts to a pure and unsupported legal conclusion or is inadmissible under Rule 403; and may not testify as to the adequacy of Murphy Bed Depot's online assembly instructions, which Haughey did not use to assemble the Next Bed. The motion is otherwise deferred until trial for the Court to evaluate the admissibility of Benedict's testimony in context of other evidence.

New Orleans, Louisiana, this 13th day of March, 2024.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[91] ECF No. 27.